UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 1:23-cr-00019-TRM-CHS |
| v. | ) | |
| | ) | |
| JAMAL GOODMAN | ) | |

REPORT AND RECOMMENDATION

I.   Introduction

This matter is before the Court upon Defendant Jamal Goodman's Motion to Suppress [Doc. 28] which the District Court has referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B)-(C). On March 11, 2022, East Ridge Police Department Officer John Perry conducted a traffic stop of Defendant that led to the seizure of a loaded firearm, marijuana, and cash [Doc. 30 at 1-3]. Defendant seeks to suppress the fruits of the "unlawful stop, frisk, arrest, and search of himself." [Doc. 28 at 1]. For the reasons stated herein, it is **RECOMMENDED** that the motion to suppress be **DENIED**.

II.   Facts

The Court conducted an evidentiary hearing on April 19, 2024. [*See* Doc. 35]. Officer Perry testified at the hearing. In addition, dash cam video, body cam video, and Officer Perry's incident report were admitted into evidence. [*See* Doc. 36].

On March 11, 2022, at about 10:28 p.m., Officer Perry was driving his patrol car on Lisa Drive (a road ending at a T-intersection with South Seminole Drive). As Officer Perry stopped at the T-intersection, Defendant drove a motorcycle along South Seminole Drive, passing across Officer Perry's line of sight from left to right. As the motorcycle passed by, Officer Perry observed that there was no license tag on the rear of the motorcycle. Officer Perry turned right onto South

1

Seminole Drive to follow Defendant. Defendant immediately turned right onto Gail Drive without signaling. He then immediately turned right again into the first driveway on Gail Drive. Officer Perry followed Defendant onto Gail Drive and then activated his lights as Defendant turned into the driveway. Officer Perry parked behind the motorcycle.

Officer Perry proceeded to ask Defendant a number of questions regarding identification, paperwork for the motorcycle, ownership of the motorcycle, the address of the residence, whether he stayed at the residence, the identities of various people at the residence, and the like. He also asked Defendant if he had any weapons on him and Defendant responded that he did not. Both Officer Perry and Defendant were cordial in their initial interactions; however, Officer Perry's interaction with Defendant heightened his suspicion that Defendant might be engaged in criminal conduct:

- Defendant appeared somewhat nervous and attempted multiple times to disengage from Officer Perry for the purpose of talking to people connected to the residence.

- Defendant did not know the address of the residence.

- Defendant did not know the name of the street on which the residence was located.

- Defendant claimed his girlfriend named Deborah lived there, but he did not know Deborah's last name.

- Defendant claimed he had just met Deborah, but that he had been staying at the residence for the last two or three days.

- Defendant identified a woman standing in the garage as Deborah's sister.

- When Officer Perry separately asked "Deborah" and her "sister" if they knew Defendant, neither confirmed that they knew him.

- Defendant did not have paperwork for the motorcycle, nor did he have insurance covering the motorcycle.

- Defendant claimed to have purchased the motorcycle the day before, and that the license plate had been ripped off the motorcycle.

- Defendant possessed two IDs—A commercial driver's license from California and an identification card from Georgia.

- Defendant did know the make and model of the motorcycle, although he stated he paid $7500 for it.

- Defendant offered to call the person from whom he purchased the motorcycle, and was able to get a person on the phone who knew detailed specifications about the motorcycle.

At one point Officer Perry told Defendant that he was asking him questions because occasionally police officers encounter people who pull into a house that is not theirs and fabricate information about their connection to the residence. A second police car arrived three and a half minutes into the encounter. Five minutes and 25 seconds into the encounter, Officer Perry again asked Defendant if he had any weapons on him. Defendant denied having a weapon on him. Officer Perry told Defendant he was going to pat him down for weapons.

Officer Perry asked Defendant to put down the bag he was carrying. Defendant was in the midst of getting a cigarette and Officer Perry told him he could light his cigarette first. Another officer was present during this interaction. Defendant verbally resisted the officers' attempts at a safety pat down, and he did not comply with instructions to put down his bag. In response, the officers told him that he would have to be detained, and Defendant's refusal to heed instructions escalated to physical resistance as the officers sought to place him in handcuffs. During the ensuing struggle, Officer Perry deployed his taser on Defendant. In the midst of the altercation, Officer Perry found a loaded handgun that was tucked into Defendant's waistband, and he was able to remove it and toss it out of Defendant's reach. After Defendant was detained. Officer Perry found .6 pounds of marijuana in Defendant's bag and cash in the amount of $1331.

### III. Discussion

#### A. Legal Basis for Traffic Stop

Defendant claims that the traffic stop violates the Fourth Amendment. [Doc. 28 at 5]. The Fourth Amendment protects people from "unreasonable searches and seizures." U.S. Const. Amend. IV. For a traffic stop to be lawful, law enforcement must have a particularized and objective basis for suspecting legal wrongdoing under the totality of the circumstances. *United States v. Arvizu*, 34 U.S. 266, 273 (2002). In support of his argument that the traffic stop violated the Fourth Amendment, Defendant asserts that Officer Perry's "dash camera clearly indicates that he cannot see the area where [Defendant's] license plate is, and there are no other circumstances indicating illegal activity is afoot." [*Id.*]

Countering Defendant's claim, Officer Perry stated in his report that he "did not observe a tag displayed on the rear of the motorcycle." [Def.'s Ex. 1]. Further, Officer Perry saw Defendant turn onto Gail Drive without signaling. [*Id.*] Finally, Officer Perry saw Defendant turn into the first driveway available. Only then did Officer Perry activate his lights.

The Court finds that the dash cam video corroborates Officer Perry's claim that he was close enough to have a reasonable view of the rear of the motorcycle as Defendant passed in front of him on South Seminole Drive. He also witnessed Defendant make a turn onto Gail Drive without signaling. Finally, Defendant's immediate turn onto Gail Road, followed by another immediate turn into a driveway, suggested potentially evasive action by Defendant after he realized that a police car was immediately behind him. Consequently, the Court finds that Officer Perry did have a particularized and objective basis for suspecting legal wrongdoing based on the totality of the circumstances.

4

**B.     Extension of Traffic Stop**

Defendant next claims that Officer Perry "unreasonably extended the stop of [Defendant]." [Doc. 28 at 7]. Specifically, Defendant complains that the "line of questioning repeatedly asking [Defendant] about the address of the residence and the identification of the people at the home unreasonably extended the stop by focusing on matters not related to a no-tag stop." [*Id*.] Indeed, a traffic stop "can become unlawful if it is prolonged beyond the time reasonably required" to fulfill its purpose. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).

Here, the initial purpose of the traffic stop was Officer Perry's observation that there was no license tag on the motorcycle being operated by Defendant. However, Defendant created a second purpose for the traffic stop when he seemingly took evasive action upon discovering that a police car was following immediately behind him. It was for this second reason that Officer Perry questioned Defendant about the address of the residence, the identity of the people at the residence, and other issues that might reveal whether Defendant had some reason to pull into that particular driveway or whether Defendant was simply trying to avoid being pulled over by law enforcement. Those questions were directly related to one of the reasons that Officer Perry made his traffic stop. In response to Officer Perry's questioning, Defendant's vague answers, his inability to provide credible identifying information about the residence and its occupants, and the home occupants' denial that they knew Defendant, further aroused Officer Perry's suspicion of legal wrongdoing on the part of Defendant and created a basis for him to continue his investigation through additional interrogation. Thus, Defendant's claim that the stop was unreasonably extended is contradicted by the evidence before the Court.

## C. The *Terry* Frisk

Defendant's third argument is that Officer Perry "lacked specific and articulable reasonable suspicion" to justify performing a *Terry* frisk. [Doc. 28 at 10]. Defendant states that any nervousness perceived by Officer Perry "is not sufficient to justify a *Terry* pat down." [*Id.* at 9].

In connection with an investigatory stop, law enforcement may subject a person to a *Terry* frisk[1] when there is "reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 326 (2009). Courts evaluate such reasonable suspicion by looking at the totality of the circumstances. *United States v. Noble*, 762 F.3d 509, 521 (6th Cir. 2014).

Officer Perry's suspicion that Defendant was armed and dangerous did not rest solely on Defendant's display of nervousness. Initially, Defendant exhibited potentially evasive behavior when he made two sudden turns—without signaling—immediately after a police car began following him. After Officer Perry followed Defendant's motorcycle into the driveway and began questioning him, Defendant kept trying to break away from Officer Perry to talk with the occupants of the residence outside of Officer Perry's presence. Defendant's answers to questions about his connection to the residence and the identity of the women who lived there struck Officer Perry as vague and evasive. And, significantly, although Defendant identified one of the women as his girlfriend and the other as his girlfriend's sister, the women denied knowing Defendant. Defendant's behavior and response to Officer Perry's questions led him to believe that Defendant was not telling the truth and that he was trying to hide something. Consequently, Officer Perry was unwilling to accept at face value Defendant's statement that he did not have a weapon. The Court

---

[1] A *Terry* frisk based on a suspicion that a suspect may be armed is so called due to the seminal case of *Terry v. Ohio*, 392 U.S. 1 (1968).

finds that, under the totality of the circumstances, Officer Perry had reasonable suspicion to justify performing a *Terry* frisk to ensure officer safety.

The Court finds that Officer Perry had a lawful basis to perform a traffic stop; to extend the stop through questioning of Defendant; and to perform a *Terry* frisk for officer safety. Consequently, evidence recovered from Defendant during the stop and *Terry* frisk (including, without limitation, the firearm and illegal controlled substance) should not be suppressed.

## IV.  Conclusion

For the reasons stated herein, it is **RECOMMENDED**[2] that Defendant's Motion to Suppress [Doc. 17] be **DENIED.**

**ENTER.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified constitutes a forfeiture of the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).